*The probate of a paper propounded as the Will of* TRACY H. HARRIS.

WILL admitted to probate, but the paper propounded as a codicil thereto rejected.

Where the witnesses were called by the decedent to sign the paper lying before him, as witnesses, and not informed of the nature of it, their surmise that it was a codicil to his will, does not relieve the want of a declaration.

Where no acknowledgment of the subscription was made to one of the witnesses, there was no such acknowledgment as the statute requires.

SIDNEY S. HARRIS, *Proponent in person.*

A. B. CAPWELL, *for Legatee under Codicil.*

J. C. SPENCER, *Special Guardian for minor next of kin.*

SIDNEY S. HARRIS, one of the persons named as executors therein, propounded for probate the following paper, purporting to be a will and codicil:

In the name of God: Amen. I, Tracy Hyde Harris, of the city, county, and State of New York, being of sound mind and memory, and considering the uncertainty of this life, do make, ordain, publish, and declare this to be my last will and testament, that is to say:

First. After all my just and lawful debts are paid and discharged, I give and bequeath unto my beloved wife, H. Virginia Harris, to be accepted and received by her in lieu of dower, all of my household effects and furniture, plate and jewelry, and also the sum of fifty thousand dollars ($50,000.00), lawful money of the United States of America, and the further sum of nine thousand three hundred dollars, or whatever amount, if any, at the time of the issuing of letters testamentary hereupon, may be remaining an incumbrance upon the house and lot owned by her, known as street number 46 (forty-six), and situated on the south side of West Forty-sixth street (W. 46th st.), in said city of New York, between the Fifth and Sixth avenues, together with any accumulated interest thereupon, so that the house and lot may thereby and therewith be made free and clear of and from all incumbrances; and I do hereby authorize and direct my executors, hereinafter named, to pay over to her, as soon as may be after the issuing of letters testamentary hereupon, the two aforesaid sums of money, together with said household effects and furniture, plate and jewelry, to be held, owned and enjoyed by her, and her heirs and assigns forever; which said legacy or legacies, given to my wife as aforesaid, I hereby declare is intended to be and is so given to her in full satisfaction and recompense of and for her dower and thirds which she may or can in any wise claim or demand out of my estate.

Second. I give and bequeath unto my two sons, Edward Wyckoff Harris, and Tracy H. Harris, Jr., the sum of $10,000 each, to be paid to them respectively, when they shall each attain the age of twenty-one years, together with any and all accumulation and increase thereof, which may be then remaining undisposed of, or unexpended as hereinafter provided; and I authorize and direct my executrix hereinafter named, and my said executors to loan the said two sums of $10,000 each, upon good and safe securities on interest at seven per cent per annum,

and in their discretion, either to apply the and increase thereof, to the maintenance and education of my two sons aforesaid, or place the same at interest upon good and safe securities, until my sons arrive at the age of twenty-one years respectively, and then pay the same over to them, together with the principal as aforesaid; the interest upon each of said sums of $10,000 to be applied to the education and maintenance of each of my said sons respectively, or added to and be paid over with the principal to each respectively, so that each shall have the sole benefit of the sum of $10,000, together with the increase thereof.

Third. I give and bequeath unto my esteemed father, Thomas J. Harris, the interest or increase of and upon the sum of ten thousand dollars ($10,000), for and during the term of his natural life; and I do authorize and direct my said executrix and executors to loan that sum of money upon good and safe securities, with interest payable semi-annually, to my father aforesaid, during the said term of his natural life; and from and after his decease, I give and bequeath the said sum of ten thousand dollars to the trustees of The American Baptist Home Missionary Society, and their successors and assigns forever.

Fourth. I give and bequeath the sum of twenty-five thousand dollars to the Evangelizing Committee of the Hudson River Baptist Association, South, to be invested or loaned by said committee and their successors, upon good and safe securities, during the continuance of such committee; and the annual or semi-annual interest thereupon to be used, employed, and expended by the said committee for the purposes and advancement of the said association; and in case of the dissolution or discontinuance of such committee, I give and bequeath the said sum of twenty-five thousand dollars to the trustees of the said Hudson River Baptist Association, South, and to their successors and assigns forever.

Fifth. I give and bequeath the sum of one thousand dollars ($1,000) to the trustees of Dartmouth College, at Hanover, in the State of New Hampshire, and to their successors and assigns forever.

Sixth. I hereby acknowledge and recognize as a legal, just and equitable claim and debt against my estate, five certain promissory notes of five thousand dollars each, given by me to the Trustees of the Rochester University at Rochester, in the State of New York, all bearing date September 1, 1865, and payable on the first day of January in the years 1867, 1868, 1869 and 1870 and 1871 respectively; and I authorize and direct my said executrix and executors to pay the same, upon the issuing of letters testamentary hereupon, or such part or portion thereof (if any there be) as shall then be remaining unpaid.

Seventh. I hereby authorize and direct my said executrix and executors to distribute and pay over the remainder of my estate, both real and personal, to my heirs, in accordance with the established laws of the State of New York for the distribution of intestates estates.

Lastly. I hereby nominate and appoint my said wife to be executrix, and my friend Jacob F. Wyckoff and Sidney S. Harris to be executors of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof, I have hereunto set my hand and seal, this      day of November, in the year of our Lord one thousand eight hundred and sixty-five.

                    TRACY H. HARRIS.    [L. S.]

The above instrument, consisting of two sheets, was, at the date thereof, signed, sealed, published and declared by the said Tracy Hyde Harris as and for his last will and testament, in presence of us, who, at his request and in his presence and in the presence of each other, have subscribed our names as witnesses thereto.

                    HIRAM F. HUTCH, New York city.
                    JOHN M. MORSE, Hoboken, N. J.
                    E. S. PIERCE, Tremont, N. Y.

It is my request that the sum of twenty thousand dollars shall be donated from my estate to the American Baptist Home Mission Society, for the church edifice fund, this amount to be in addition to the ten thousand dollars mentioned in the foregoing will to be donated that society after my father's decease.

New York, June 11, 1867.

TRACY H. HARRIS.

Witness—

N. HAYDEN,

T. T. THOMPSON.

The Surrogate appointed James C. Spencer, Esq., special guardian of Edward W. Harris and Tracy H. Harris, minor next of kin and heirs-at-law of the decedent. On behalf of his wards, the special guardian contested the proof of the codicil above recited, dated the 11th of June, 1867.

Nathaniel Heydon, a witness, called for the proponent, testified: He is a subscribing witness to the paper purporting to be a codicil, and now shown to witness; the decedent's name was signed to the paper before this witness signed the paper; did not see the decedent sign; the decedent came to the witness, and wished witness to step into his office; he did so; decedent gave witness the paper; did not say what it was; did not say that that was his signature; all the decedent said was, "witness that;" witness did sign, and handed the paper back to decedent, and left the office; no one else was present; this is all that took place; witness was in employ of the decedent as clerk at that time.

On cross-examination witness says: Decedent came to witness, and said he had a document he wished him to witness; witness then went with decedent into his office; this paper propounded was there lying on the desk; it and the signature to it were all in decendent's handwriting, which the witness was acquainted with; witness saw the signature when he made his own, but did not notice

the other part; did not read any portion of it; is pretty positive decedent used the expression "here is a document I wish you to witness;" the witness supposed the paper was decedent's will at the time; the witness remembers a conversation with Mr. Thompson (the other subscribing witness), in reference to the document they had witnessed; it was soon after the occurrence; don't recollect if it was that day; the conversation was in regard to decedent's brother, Charlie Harris; that Charlie was receiving something by the will—$10,000 or $20,000; supposed it was a codicil to the decedent's will, because witness knew decedent was going away; had no reason for knowing it was for certain, but supposed it was.

Thomas F. Thompson, called for proponent, testified: Is a subscribing witness to the paper propounded as a codicil; did not see the decedent sign it; at the time the witness signed it, the decedent was sitting at his desk in the out side office, at No. 388 Broadway; the witness was standing within fifteen feet of him; the decedent stood up, looked around, and called for Mr. Hayden; Mr. Hayden was standing in the center of the store; witness called him; witness saw Hayden sit down and sign some paper; decedent then called this witness, and asked him to sign the paper; the paper was lying on the desk; decedent pointed to his own signature—simply pointed to it, and asked witness to sign it; witness commenced to read it, but decedent said it was not necessary to read it; that it was a mere matter of form of witnessing his signature; the witness saw that it was decedent's signature; recognized the paper to be in decedent's handwriting, and signed as a witness; decedent made the remark that he did not know what might happen by crossing the Atlantic; thinks this remark was made at the close of the conversation; from all that decedent said and did at the time, the idea was conveyed to witness that it was a will or a codicil; decedent did not say so; witness got the idea that it was a will or codicil, from the

fact of seeing a sum named in the writing, and from decedent's asking him to witness it; from the day of witness' witnessing the paper until to-day, witness has been under the impression that the word " codicil " was at the left hand corner of the page; immediately after signing the paper, witness had a conversation with Mr. Hayden in relation to it; witness made a remark to Mr. Hayden that the decedent had remembered his brother in the codicil we had signed; for, seeing the letters " Ch." in the paper, witness supposed it was a legacy to decedent's brother; thinks Mr. Hayden said " yes;" at the time decedent said to witness that it was " a mere form of witnessing my signature," thinks he called, in that way, witness' attention to his signature; called witness' attention from reading the paper, to the signature, and to his witnessing it.

*Cross-examined.*

The recollection of the witness is distinct as to the main points of the facts and circumstances; when Mr. Hayden signed this, witness was standing at the same place where he was when he called Hayden; saw Hayden sign, as well as he could at about twelve or fifteen feet from him; saw him take the pen and sign; did not hear the decedent request Hayden to sign; saw him as if speaking to Hayden, but did not hear what he said; saw him point to the paper; when this witness signed the paper, the decedent was not at the desk, but may not have been far off; thinks he was going to the front part of the store.

THE SURROGATE. Nothing appears to have been said by the decedent to the witness, Hayden, which had any reference to his (decedent's) subscription of the paper propounded as a codicil. That being the case, it is not necessary to discuss whether the language used by him to the witness, Thompson, was a sufficient acknowledgment to him of the subscription. The subscription was not acknowledged, in contemplation of law, by the decedent

to have been so made, to each of the attesting witnesses. (3 *R. S.*, 5*th ed.*, *p.* 144, §§35–2.)

There was no declaration or publication to either of the two witnesses that this paper was a will or codicil, nor were any words used by the decedent which implied such a declaration to them or either of them. On the contrary he took pains to keep the witness Tompson in ignorance of what the paper was, by telling him it was not "necessary to read it." There is no attestation clause, and the impression which the two clerks seem to have got as to the nature of the instrument was certainly not derived by them from the decedent at the time of their signing it.

Although the decedent has made a paper intending it for his will, he must comply with the statute. (*Peck* v. *Cary*, 27 *N. Y. Rep.*, *p.* 24.)

If there be a reasonable doubt whether any one of the requirements of the statute has been complied with, probate must be denied. (*Tarrent* v. *Ware*, 25 *N. Y. Rep.*, *p.* 429.)

And the Courts have gone no further than to hold that if the decedent requests the witnesses to sign, and at the same time declare it to be his will, there is a substantial compliance with the statutes. (*Baskin* v. *Baskin*, 36 *N. Y. Rep.*, *p.* 416.) No cases hold that a request to sign as witness, without a declaration that it is a will, would be sufficient.

There must be a decree admitting the will to probate, and rejecting the paper offered as a codicil.